**382 McDonald LLC v New York City Indus. Dev. Agency**

2024 NY Slip Op 32218(U)

July 1, 2024

Supreme Court, New York County

Docket Number: Index No. 161947/2023

Judge: Arlene P. Bluth

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. ARLENE P. BLUTH                    PART                 14

*Justice*

-------------------------------------------------------------------------------X

382 MCDONALD LLC,

|  |  |
|---|---|
| INDEX NO. | 161947/2023 |
| MOTION DATE | 06/27/2024 |
| MOTION SEQ. NO. | 001 002 |

Petitioner,

- v -

NEW YORK CITY INDUSTRIAL DEVELOPMENT AGENCY,
NEW YORK CITY ECONOMIC DEVELOPMENT
CORPORATION, 302 MEAT CORP., 302-306 CHURCH
REALTY CORP.

**DECISION + ORDER ON
MOTION**

Respondents.

-------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 1- 13, 14, 15, 16, 17, 18, 19, 20, 21, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64

were read on this motion to/for                          ARTICLE 78                          .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 22- 65

were read on this motion to/for                          ARTICLE 78                          .

The petition[1] to *inter alia* annul a determination by respondents the New York City

Industrial Development Agency and New York City Economic Development Corporation

(collectively, the "City Respondents") concerning the application of respondent 302 Meat

Corp.'s Food Retail Expansion to Support Health ("FRESH") program is denied.

---

[1] The Court observes that motion sequence 001 appears to cover the initial petition and answer while motion sequence 002 concerns the amended petition. Unfortunately, many of the parties' filings were either filed under the wrong sequence number or omitted any reference to a sequence number. To be clear, this decision resolves both of these sequence numbers.

**161947/2023   382 MCDONALD LLC vs. NEW YORK CITY INDUSTRIAL DEVELOPMENT AGENCY          Page 1 of 11
ET AL
Motion No.  001 002**

[* 1]

## Background

Petitioner runs a large grocery store in the Kensington neighborhood of Brooklyn. It brings this case to complain about City Respondents' administration of the FRESH program. Even according to petitioner, this program has laudable goals—it promotes the establishment and retention of supermarkets in underserved communities. The program comes with real estate tax reductions, sales tax exemptions and a mortgage recording tax deferral to applicants approved by respondents.

However, petitioner insists that the program's application to the instant circumstances is an irrational effort to give a competitive advantage to a new supermarket in petitioner's neighborhood. It argues that contrary to the FRESH program's requirements, Kensington already has enough supermarkets. Petitioner argues that the only reason the instant application, by respondent 302 Meat Corp. ("302 Meat"), was approved is that a loophole was exploited concerning how the projects are zoned. Essentially, petitioner contends that because the application concerns a census tract that includes both Kensington and Windsor Terrace (an adjacent neighborhood), the City Respondents improperly included this area in the FRESH program despite the fact that the area already has enough grocery stores. Petitioner insists that it was not rational to force it to compete with a competitor who is subsidized by the City Respondents.

City Respondents contend that 302 Meat's application sought tax benefits for a grocery store and that they thoroughly reviewed the application. They stress that 302 Meat's owner previously helped operate other grocery stores in New York City. The City Respondents contend that they verified that the project fell within the FRESH-eligible area under the terms of the relevant statute—they argue that the proposed supermarket is located in the correct census tract.

161947/2023   382 MCDONALD LLC vs. NEW YORK CITY INDUSTRIAL DEVELOPMENT AGENCY        Page 2 of 11
ET AL
Motion No.  001 002

2 of 11

The relevant statute, General Municipal Law § 854(18), provides that:

"18) "Highly distressed area" -- shall mean (a) a census tract or tracts or block numbering areas or areas or such census tract or block numbering area contiguous thereto which, according to the most recent census data available, has:

(i) a poverty rate of at least twenty percent for the year to which the data relates or at least twenty percent of households receiving public assistance; and

(ii) an unemployment rate of at least 1.25 times the statewide unemployment rate for the year to which the data relates; or

(b) a city, town, village or county within a city with a population of one million or more for which: (i) the ratio of the full value property wealth, as determined by the comptroller for the year nineteen hundred ninety, per resident to the statewide average full value property wealth per resident; and (ii) the ratio of the income per resident; as shown in the nineteen hundred ninety census to the statewide average income per resident; are each fifty-five percent or less of the statewide average; or

(c) an area which was designated an empire zone pursuant to article eighteen-B of this chapter."

City Respondents observes that the project is located in Census Tract 488, which is contiguous to Census Tract 486. They claim that the most recent census data shows that the unemployment rate for 486 to be almost twice the statewide average and that over 20% of the population in 486 live below the property line.

Respondents 302 Meat and 302-306 Church Realty Corp. (the landlord) oppose the petition on similar grounds as City Respondents. They contend that the City expanded the number of community districts eligible for the FRESH program in December 2021 and that they simply availed themselves of this program's benefits.

In reply, petitioner emphasizes that there was no public hearing and complains that respondent the New York City Industrial Development Agency ("IDA") improperly deputized the New York City Economic Development Corporation ("EDC") to conduct a meeting. It insists that there was no meaningful consideration of the application and, in particular, of the traffic impacts and loss of jobs at nearby supermarkets.

161947/2023    382 MCDONALD LLC vs. NEW YORK CITY INDUSTRIAL DEVELOPMENT AGENCY        Page 3 of 11
ET AL
Motion No.  001 002

[* 3]

3 of 11

**Standing**

City Respondents' initial argument in opposition is that petitioner lacks standing. They contend that petitioner did not establish that it has suffered an injury in fact within the requisite zone of interest. City Respondents argue that petitioner's only harm is "business harm" and that is not a basis to properly allege standing. They also contend that petitioner's concerns about an improper environmental review rely almost exclusively on traffic concerns—and traffic is not a basis to assert standing. City Respondents point out that petitioner's traffic study, NYSCEF Doc. No. 29, does not cite an impact to petitioner's property.

Petitioner claims it has standing because it has proximity to the site and from the business impacts on its store. It argues that the statute promulgating the FRESH program is intended to protect existing businesses and so its economic harm arguments confer standing to bring this petition. Petitioner also asserts that its noneconomic harm, the environmental concerns, constitute sufficient standing to bring this proceeding. It emphasizes that it is right near the site and will suffer a direct injury. Petitioner maintains that 302 Meat has received an unfair advantage over other supermarkets in the neighborhood.

There is "a two-part test for determining when a party has standing to contest administrative action. . . . [A] petitioner needs to show that the administrative action will in fact have a harmful effect on the petitioner and that the interest asserted is arguably within the zone of interest to be protected by the statute. . . .[S]omething more than the interest of the public at large is required to entitle a person to seek judicial review—the petitioning party must have a legally cognizable interest that is or will be affected by the determination" (*Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency*, 76 NY2d 428, 433, 559 NYS2d 947 [1990] [internal

**161947/2023   382 MCDONALD LLC vs. NEW YORK CITY INDUSTRIAL DEVELOPMENT AGENCY         Page 4 of 11
ET AL
Motion No.  001 002**

[* 4]

4 of 11

quotations and citations omitted])."Of course, competitive injury, of itself, will not confer standing" (*Dairylea Coop., Inc. v Walkley*, 38 NY2d 6, 11, 377 NYS2d 451 [1975]).

The Court finds that is exactly what petitioner's central complaint is here—that it will be at a competitive disadvantage because a nearby grocery store is receiving financial benefits. That, by itself, does not confer standing. In similar situations, appellate courts have reached this same conclusion (*Subway Check Cashing Serv., Inc. v Considine*, 158 AD2d 406, 551 NYS2d 521 [1st Dept 1990] [holding that a check cashing business lacked standing to challenge the issuance of a check cashing license to a competitor at a nearby location]; *see also Matter of LaSalle Ambulance Inc. v New York State Dept. of Health*, 245 AD2d 724, 725, 665 NYS2d 747 [3d Dept 1997] [concluding that an ambulance service lacked standing to seek vacatur of an ambulance service certificate where petitioner merely claimed competitive injury]).

The Court recognizes that petitioner may well face competitive challenges from a nearby grocery store that is receiving financial assistance. But that alone is not a basis to permit it to challenge City Respondents' approval of 302 Meat's application. Petitioner even admits that the location satisfies, at least facially, the requirements under the General Municipal Law; instead, petitioner argues that 302 Meat has exploited a loophole. But that is too attenuated to properly allege standing where, as here, petitioner does not seek to challenge the entire law itself—petitioner only seeks to annul 302 Meat's application approval and the subsequent resolutions reflecting that approval.

Similarly, petitioner's complaints about traffic do not confer standing because petitioner did not meet its burden to properly allege injury from this traffic. Petitioner's traffic study, NYSCEF Doc. No. 29, does not specifically cite any harms to petitioner. Instead, it contends there will be negative effects on traffic, pedestrian safety as well as parking issues. But the fact

161947/2023   382 MCDONALD LLC vs. NEW YORK CITY INDUSTRIAL DEVELOPMENT AGENCY          Page 5 of 11
ET AL
Motion No.  001 002

5 of 11

that petitioner runs a nearby business is not a basis to find that there is standing (*Mobil Oil Corp.*, 76 NY2d at 433 [finding that a nearby property owner was not presumptively injured by a development project and that petitioner had to show a specific environmental harm]). Generalized concerns about traffic does not confer standing to petitioner.

**Application Approval**

Even if petitioner had standing, the Court finds no basis to vacate the application approval and the subsequent resolutions. City Respondents rationally point out that the location for 302 Meat's store complies with the relevant General Municipal Law statute. They claim that they properly considered the relevant policy guidelines and determined that the store would not go forward without assistance from the FRESH program, a factor that supports the application's approval. City Respondents detail how they examined the proposed lease between the applicant (302 Meat) and the landlord before the FRESH application was approved. They argue that the fact that 302 Meat began certain renovations prior to the approval is of no moment as the vast majority of the benefits for the project have not yet taken effect so 302 Meat was taking its own risk by doing these renovations.

City Respondents properly pointed out that they considered, "variously" (the term described in the policy in NYSCEF Doc. No. 35 at 2-3) the factors identified in the applicable policy. City Respondents contend that they received extensive public comments and held a public hearing on April 20, 2023 (*see* NYSCEF Doc. No. 48 [written public comments at the April 2023 hearing]).

Petitioner's opposition amounts, in this Court's view, to a strenuous disagreement with City Respondents' findings. Petitioner points to an impact analysis (NYSCEF Doc. No. 28) in

which it is estimated that 40% of its business will go to the new store operated by 302 Meat. But, as City Respondents point out, this analysis is far too conclusory to substantiate a claim that the application approval was arbitrary and capricious. There is no dispute from this record that City Respondents directly considered the relevant factors. It was entitled to consider and adopt 302 Meat's analysis, which argued that the area was under-served as well as that nearby competitors did not offer full grocery services. City Respondents readily acknowledge that petitioner's opposition letter was considered and discussed at the April 2023 meeting.

The point is that this is not a situation in which this Court is concerned that petitioner's objections were wholly disregarded or that petitioner did not have an opportunity to present its view. "It is not the province of the courts to second-guess thoughtful agency decisionmaking and, accordingly, an agency decision should be annulled only if it is arbitrary, capricious or unsupported by the evidence" (*Riverkeeper, Inc. v Planning Bd. of Town of Southeast*, 9 NY3d 219, 232, 851 NYS2d 76 [2007]). That is exactly what petitioner asks this Court to do here—to review petitioner's objections and conclude that 302 Meat's application should not have been approved. In other words, even if petitioner had standing, it did not show that the agencies' decision to approve the application was arbitrary.

**Environmental Review**

Petitioner takes issue with the City Respondents' decision to issue a negative declaration. City Respondents concluded that no environmental review was required for the subject project.

"The State Environmental Quality Review Act (SEQRA) requires New York State and local agencies to review any action that comes before it to determine whether or not it may have a significant adverse environmental impact. As part of this process, agencies classify actions into

**161947/2023  382 MCDONALD LLC vs. NEW YORK CITY INDUSTRIAL DEVELOPMENT AGENCY  Page 7 of 11
ET AL
Motion No.  001 002**

[* 7]

7 of 11

Type I, Type II, or Unlisted" (*Carlson v New York City Council*, 227 AD3d 406, 208 NYS3d 197 [1st Dept 2024] [internal quotations and citations omitted]). "Type II actions are those that have been found not to have the potential for a significant impact, and thus are not subject to review under SEQRA" (*S. Bronx Unite! v New York City Indus. Dev. Agency*, 115 AD3d 607, 609 n4, 983 NYS2d 8 [1st Dept 2014]).

Here, City Respondents classified this project as a Type II action and issued a negative declaration. "Generally, a 'Negative Declaration' is a determination that the proposed action would not have a significant environmental impact. . . . If an agency issues a Negative Declaration it must provide a reasoned elaboration for the basis of its determination" (*Save Audubon Coalition v City of New York*, 180 AD2d 348, 358-59, 586 NYS2d 569 [1st Dept 1992]).

City Respondents rationally point out that the project at issue would use an existing retail building for the new store and attach a Type II memo (NYSCEF Doc. No. 43) that details the reasons for this conclusion. The site was a former Rite-Aid (NYSCEF Doc. No. 42 at 7 of 31). They explain that the project entailed renovating this retail building, but did not include expanding this property's footprint. City Respondents conclude that there would be no substantial change and so there is no reason to annul the Type II classification.

This Court agrees that the City Respondents' Type II designation was rational (*see Chatham Towers Inc. v New York City Police Dept.,* 75 AD3d 431, 432, 904 NYS2d 64 [1st Dept 2010] [approving a Type II designation for a project]). Petitioner did not sufficiently explain how renovating a vacant former retail site constitutes a substantial change to require environmental reviews under either the state or city environmental statutes. It was not irrational to conclude that converting a former Rite-Aid to a grocery store is not a substantial change

161947/2023   382 MCDONALD LLC vs. NEW YORK CITY INDUSTRIAL DEVELOPMENT AGENCY          Page 8 of 11
ET AL
Motion No.  001 002

8 of 11

[* 8]

requiring an environmental analysis.  In fact, as City Respondents point out, the intended use is an "as of right use" under the applicable zoning regulations.

**Other Issues**

City Respondents also followed the required procedural steps in connection with this project.  Specifically, they held a hearing under the General Municipal Law § 859-a with the requisite notice. That one respondent (NYCEDC), instead of NYCIDA, held the hearing is of no moment as NYCIDA is permitted to use agents for a municipality (General Municipal Law § 858 [6]-[8]). The fact is that petitioner did not cite any binding caselaw or statutory authority for its contentions that the public hearing should be disregarded.

Petitioner also takes issue with the Amended Authorizing Resolution. It emphasizes that the City Respondents adopted an amended resolution in April 2024 (after this proceeding was commenced) that changed the rationale for the Type II classification. Previously, the resolution (from November 2023) noted that a Type II designation was justified because the project involved investments by agencies and the amended resolution cited that the project merely renovated an existing structure on the site.  Petitioner argues that this shows the process was faulty and that there was no public hearing in connection with this amended resolution.

The Court declines to grant the petition on the ground that the City Respondents made a clerical error.  The record before this Court shows that they considered the project to be a Type II project, i.e., one that did not require environmental review, throughout the consideration process, and that the project would merely utilize an existing site. In other words, the Court finds that it was not irrational for City Respondents to decline to conduct an entirely new hearing to make a minor clerical error that did not have any bearing on the substance of the project. The fact is that

161947/2023    382 MCDONALD LLC vs. NEW YORK CITY INDUSTRIAL DEVELOPMENT AGENCY        Page 9 of 11
ET AL
Motion No.  001 002

the original resolution specifically noted the project involved the "renovation" of an existing site (NYSCEF Doc. No. 53 at 2 of 15).

And the Type II memo, drafted in March 2023 (well before the resolutions at issue) contends that a Type II designation is required because the project involved the "replacement, rehabilitation or reconstruction of a structure or facility, in kind, on the same site, including upgrading buildings to meet building or fire codes… which would not result in adverse environmental impacts requiring the preparation of an Environmental Impact Statement" (NYSCEF Doc. No. 43). In other words, this memo cites the exact same rationale cited in the amended resolution.

**Summary**

The Court recognizes petitioner's frustration. It has worked hard for over 30 years to build a business and now the City Respondents are subsidizing a competitor. Petitioner contends that the point of the FRESH program was never to grant financial incentives to a project like the one at issue here. Petitioner argues that the 302 Meat project is, essentially, exploiting a loophole in the locations eligible for the program. But it is not this Court's role in this proceeding to opine on policy decisions, including the 2021 expansion of the FRESH program. Petitioner did not challenge the law itself; rather, it challenges this particular application and the Court must therefore evaluate whether or not City Respondents acted rationally in applying the rules of the program under these specific circumstances.

This Court finds that the City Respondents acted rationally. Setting aside the fact that petitioner does not have standing to bring this proceeding, City Respondents demonstrated that they considered the relevant factors and utilized the required process, which included a public

161947/2023   382 MCDONALD LLC vs. NEW YORK CITY INDUSTRIAL DEVELOPMENT AGENCY        Page 10 of 11
ET AL
Motion No.  001 002

10 of 11

hearing. That petitioner does not like the ultimate outcome does not make the City Respondents'

determination irrational.

Accordingly, it is hereby

ADJUDGED that the petition is denied and this proceeding is dismissed without costs or

disbursements.

| | | |
|---|---|---|
| **7/1/2024** | | |
| **DATE** | | **ARLENE P. BLUTH, J.S.C.** |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | GRANTED | X DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

**161947/2023   382 MCDONALD LLC vs. NEW YORK CITY INDUSTRIAL DEVELOPMENT AGENCY        Page 11 of 11
ET AL
Motion No.  001 002**

[* 11]

11 of 11